UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| STEVE W. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:11-CV-55 |
| | ) | (VARLAN/GUYTON) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 19 and 20]. Plaintiff Steve W. Brown seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On May 29, 2007, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began December 15, 2006. [Tr. 62-63]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On January 6, 2009, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 738-60]. On August 31, 2009, the ALJ found that the Plaintiff was not disabled.

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since December 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus, status-post amputations to the bilateral feet (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 10, 1968 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

2

framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17-22].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for

3

work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial

4

evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors

5

were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

The evidence in this case can be summarized as follows.

*A. Medical Evidence*

The record available prior to the alleged onset date indicates a preexisting history of poorly healing diabetic ulcers, with treatment records from William L. Johnson, M.D., for non-healing wounds on his feet due to uncontrolled diabetes. [Tr. 363-390]. The Plaintiff's right great toe was removed on March 17, 2004, [Tr. 364], and on May 15, 2007, his left great toe and distal metatarsal were removed, [Tr. 370]. Both amputations were caused by uncontrolled, severe diabetes. [Tr. 364, 370]. Following the amputation in 2007, the Plaintiff was forced to return for an irrigation and debridement of the left foot on June 20, 2007. [Tr. 372].

On August 10, 2007, Dr. Johnson observed, "Patient returns today with his foot wound healing nicely after recent amputation and revision." [Tr. 304]. Dr. Johnson found that a small

6

area above his ankle had become infected, but Dr. Johnson noted that this area was not endangered at that point.

Saeed Etezadi, M.D., provided primary care to the Plaintiff in 2006 and 2007. Dr. Etezadi documented the Plaintiff's diabetes, noted his treatment with Dr. Johnson, and prescribed treatments for the diabetes and related conditions. [Tr. 433-34, 440-41].

On January 24, 2008, the Plaintiff presented for a consultative examination with Jeffrey Summers, M.D. [Tr. 348-49].[1] Dr. Summers noted the evidence of the Plaintiff's previous surgical amputations. Dr. Summers found the Plaintiff had diminished sensation in both feet and a waddling gait. Dr. Summers explained, "Based on these findings, it is reasonable to expect that he will have difficulty standing and walking for greater than 30 minutes continuously or more than 4 hours total in a single workday." [Tr. 349]. Dr. Summers further advised that the Plaintiff should avoid "balancing, climbing, working from heights, crouching, kneeling, squatting, etc[.] on a frequent basis." [Tr. 349].

In February 2008, the Plaintiff was admitted to the hospital with a new ulceration on the right foot; he admitted intermittent noncompliance with his diabetic care due to a lack of insurance. [Tr. 277-80]. The Plaintiff was hospitalized from February 20-26, 2008, requiring IV antibiotics and Morphine for pain. [Tr. 275-76].

On April 18, 2008, the Plaintiff visited Jeffrey Fokens, M.D. Dr. Fokens's notes from that visit show that the Plaintiff's right foot ulcer persisted. [Tr. 119]. The Plaintiff also had

---

[1] Dr. Summers's report appears to have a rubber stamp of his signature in the signature block at the end of the report. [Tr. 349]. According to the regulations, all consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. 20 C.F.R. § 404.1519n(e). Generally, a rubber stamp signature from a consultative examiner is not acceptable. While Dr. Summers's report technically violates 20 C.F.R. § 404.1519n(e), the Plaintiff has not alleged that Dr. Summers did not perform the examinations or that he did not set forth the findings in the report. The Plaintiff has not objected to the report on the basis of the stamped signature, or requested remand on that basis. Accordingly, the Court finds any error to be waived.

decreased sensation on examination, though he retained vibratory sensation. [Tr. 119]. In May 2008, the Plaintiff developed a new wound on the left forefoot after stepping on a nephew's toy car, which was treated by Dr. Fokens. [Tr. 130]. Dr. Fokens noted, "He also wanted a temporary disabled parking sticker, and that would be reasonable at this point." [Tr. 130].

On May 1, 2008, the Plaintiff was seen by Robert Chris Hancock, D.P.M., at the Wound Healing Center at St. Mary's Medical Center. [Tr. 220]. Dr. Hancock prescribed the Plaintiff a wheelchair so that he could stay off of his feet. Dr. Hancock remarked, "I discussed with him, if he continues to be noncompliant, there is a good chance he will end up with osteomyelitis and limb loss." [Tr. 220].

On a visit to the Wound Healing Center on August 1, 2008, a neurological exam of the feet was "grossly diminished" with no sensorium on monofilament testing. [Tr. 205]. The Plaintiff denied walking around barefoot, though "a lot of dirt and gravel and debris [were found] inside his shoe." [Tr. 205].

The Plaintiff was admitted to the hospital on November 11, 2008, after developing osteomyelitis in conjunction with the chronic right foot ulcer. [Tr. 188]. After treatment with antibiotics, he underwent transmetatarsal amputation and Achilles tendon release. [Tr. 188-89]. M. Chris Testerman, M.D., was the treating surgeon. The postoperative course was marked by reports of swelling and pain due to infection and a new blister on the right foot. At the time of Plaintiff's January 2009 hearing, he remained hospitalized in order to receive IV antibiotics and whirlpool therapy. [Tr. 136-168; 748-749].

B. *Other Evidence*

At the hearing held before the ALJ on January 6, 2009, the Plaintiff testified that after his May 2007 amputation, he was able to attend to activities of daily living such as housecleaning

8

and grocery shopping, while compensating for balance problems. [Tr. 746-47]. In regards to his non-compliance, the Plaintiff testified that he tried to do what his doctors asked of him. [Tr. 750]. In regards to specific allegations of his selling his pain medication, the Plaintiff testified that did not sell his pain pills. He instead explained that they were stolen by someone staying at his home. [Tr. 750]. The Plaintiff testified that he spends most of his day watching television, though he occasionally goes to the grocery store. [Tr. 752-53]. He testified that he has pain and swelling in the feet unless they are elevated. [Tr. 753].

At the January 2009 hearing, Julian Nadolsky, a vocational expert, testified that the Plaintiff had performed eighteen jobs in the last fifteen years ranging from light to heavy in exertion. [Tr. 757]. When asked if there would be jobs available for the Plaintiff, if he was able to perform sedentary work, with certain enumerated restrictions, Mr. Nadolsky responded that there would be jobs available in the regional economy and national economy. [Tr. 758]. Mr. Nadolsky confirmed that, if the Plaintiff was unable to complete an eight-hour day of work due to his conditions or – for example, his need to have his feet elevated – then there would not be work that he could do. [Tr. 758].

V.     POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred in evaluating and affording weight to the opinions of three treating physicians: (1) Saeed Etezadi, M.D., (2) M. Chris Testerman, M.D., and (3) William L. Johnson, M.D. The Commissioner maintains that the ALJ properly considered the opinions of the Plaintiff's treating physicians and provided good reasons to support her assessment of each of the treating physicians' opinions.

9

## VI.　ANALYSIS

### A.　The Treating Physician Rule

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight.  20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).  But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision.  20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

Nonetheless, the ultimate decision of disability rests with the ALJ.  King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  And as the Court of Appeals for the Sixth Circuit has recently

10

reaffirmed, the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times."  Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam).

**B.      The Weight Afforded to the Findings of the Treating Physicians**

With the treating physician rule and applicable statutory provisions in mind, the Court finds as follows with regard to each of the Plaintiff's allegations of error.

*1.      Saeed Etezadi, M.D.*

On June 25, 2007, Dr. Etezadi completed a two-page form entitled, "Questionnaire Regarding Diabetes," which consists of seven yes/no questions, one short-answer question, and two multiple-choice questions.  In response to these questions, Dr. Etezadi indicated, *inter alia*, that the Plaintiff had neuropathy and amputations that "would cause physical limitation" and that the Plaintiff's "subjective complaints seem reasonable."  [Tr. 341].  Dr. Etezadi responded that the Plaintiff could stand for one hour, sit for two-four hours, and walk for less than one hour in an eight-hour day.  [Tr. 341].  He stated that the Plaintiff could carry less than five pounds on a regular basis and only occasionally carry six to ten pounds.  [Tr. 341].  When asked, "Could this patient be reasonably expected to be reliable attending an 8-hour day, 40-hour work week in view of the existing condition?"  Dr. Etezadi checked the "No" box.  [Tr. 341].

The ALJ explained the weight afforded to the questionnaire completed by Dr. Etezadi, by stating:

> Dr. Etezadi completed a Questionnaire Regarding Diabetes on June 25, 2007.  Dr. Etezadi reported that the claimant has neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station.  There is amputation at, or above, the tarsal region due to diabetic necrosis or peripheral arterial disease.  The undersigned finds that although Dr. Etezadi is an [sic] treating source, the opinion appears to be too restrictive to be supported by the

11

objective evidence of record, and therefore, cannot be given great weight.

[Tr. 19].

The Plaintiff argues that the ALJ did not give good reasons for discounting the responses provided by Dr. Etezadi. The Court finds that this argument is not well-taken. As noted by the ALJ, Dr. Etezadi's findings were not consistent with the objective medical evidence in the record. Dr. Etezadi's own progress notes do not indicate restrictions on the Plaintiff's physical activity. [Tr. 434, 441]. In addition, the ALJ noted that he had afforded great weight to the opinion of Dr. Summers, which found that the Plaintiff could stand for up to four hours. [Tr. 20].

Moreover, the postural limitations found by Dr. Etezadi were, to a large extent, incorporated in the ALJ's finding that the Plaintiff retained the ability to perform sedentary work, which requires sitting but a more limited amount of walking and standing. 20 CFR § 404.1567(a).

Finally, to the extent the Plaintiff's allegation of error refers to Dr. Etezadi's finding that the Plaintiff cannot complete a full work day or work week, the Court finds that this opinion infringes upon the exclusive domain of the ALJ. As Social Security Ruling 96-5p explains:

> [T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

96-5p at *2; see also 20 C.F.R. § 404.1527(e). Thus, the Court finds any failure to credit this finding was not error.

12

Accordingly, the Court finds that the ALJ did not err in her treatment of the findings indicated by Dr. Etezadi in the "Questionnaire Regarding Diabetes."

2.  *M. Chris Testerman, M.D.*

In a letter composed on November 25, 2008, and addressed "To Whom It May Concern," Dr. Testerman reviewed the Plaintiff's conditions, including his ulcers and related need for bracing. [Tr. 249]. Dr. Testerman noted that the Plaintiff suffered from diabetes, renal disease, and hypertension. [Tr. 249]. She explained:

> [The Plaintiff] is unable to stand for prolonged periods of time. He cannot lift and carry. He is unable to sit for prolonged periods of time because of the swelling in his lower extremity. At this point he is not able to work and I would recommend these restrictions as permanent.

[Tr. 249].

The ALJ explained the weight afforded to Dr. Testerman's opinion, by stating:

> Treating orthopedist, Dr. Testerman, reported on November 25, 2008, that the claimant is an insulin dependent diabetic who has chronic recurrent foot ulcers which has required an amputation of a third of his right foot. He is going to require permanent bracing. On the left, he has already had amputation of the first ray and at this point does not have a chronic ulcer there. Dr. Testerman reported that the claimant is unable to stand for prolonged period[s] of time. He cannot lift and carry. He is unable to sit for prolonged periods of time because of the swelling in the lower extremity. Dr. Testerman reported that at this point, the claimant is not able to work and he would recommend these restrictions be permanent. The undersigned notes that Dr. Testerman is a treating specialist; however, when compared to the overall record as a whole, it does not appear that the opinion that the claimant cannot work on an indefinite basis is consistent with the evidence. In regard to the remaining parts of the opinion, they are consistent with the residual functional capacity given by the Administrative Law Judge.

13

[Tr. 19 (internal citation omitted)].

The Plaintiff argues that the ALJ erred in finding that the Plaintiff could perform sedentary work despite Dr. Testerman's indication that the Plaintiff could not sit for a long period of time. [Doc. 16 at 14]. The Plaintiff implies that the ALJ should have afforded Dr. Testerman's opinion additional weight or provided further explanation of why he did not afford such weight. [Doc. 16 at 14]. The Court finds that this argument is also not well-taken.

The ALJ found the majority of Dr. Testerman's opinion to be consistent with the record and with the ultimate residual functional capacity determination. The ALJ's determination that the Plaintiff, who suffered from diabetes mellitus and status post-amputations, could perform sedentary work is consistent with Dr. Testerman's notes that the Plaintiff could not sit and stand "for prolonged periods of time" and could not lift and carry items. [Tr. 21]; see 20 C.F.R §§ 404.1567(a), 416.967(a).

The ALJ did not, however, credit Dr. Testerman's suggestion that the Plaintiff would not be capable of work going forward. As discussed in Ruling 96-5 and the statutory provisions discussed above, such findings are reserved for the Commissioner and are not due any special significance. Thus, the Court finds that the ALJ did not err by not affording additional weight to this suggestion and further finds that the ALJ's explanation of this decision was sufficient.

Accordingly, the Court finds that the Plaintiff's allegation that the ALJ erred in her treatment of the findings of Dr. Testerman is not well-taken.

3.  *William L. Johnson, M.D.*

Finally, Dr. Johnson completed a form entitled "Treating Relationship Inquiry," ("the Inquiry") on June 28, 2007. The Inquiry consists of a series of yes/no questions, short-answer questions, multiple-choice questions, and prompts for explanation. [Tr. 359-62]. In the Inquiry,

Dr. Johnson noted the Plaintiff's diabetes, ulcer condition, and amputations. He opined that the Plaintiff could sit for eight hours of an eight-hour day, stand for two hours in an eight hour day, and walk for one hour in an eight-hour day. [Tr. 359]. He further indicated that the Plaintiff could occasionally lift up to twenty pounds. [Tr. 359]. Dr. Johnson indicated that the Plaintiff should be limited to only occasional bending, stooping, squatting, kneeling, and climbing of stairs, with no crawling. [Tr. 360]. Dr. Johnson responded that the Plaintiff did not require bed rest, but he indicated that the Plaintiff's pain would require him to elevate his feet and affect his concentration. [Tr. 361]. He also noted potential problems with balance, stamina, and endurance. [Tr. 360]. When asked if the Plaintiff could be reasonably expected to attend an eight-hour day and forty-hour week, without missing more than two days, he checked the "No" box. [Tr. 359].

The ALJ explained the weight afforded to the questionnaire completed by Dr. Johnson, by stating:

> The claimant's treating physician, Dr. Johnson, completed a Treating Relationship Inquiry on June 28, 2007. He reported that the claimant can continuously sit 8 hours out of an 8-hour day, stand 2 hours out of an 8-hour day, and walk 1 hour out of an 8-hour day. He can occasionally lift/carry 20 pounds. He can never crawl; frequently reach above shoulders; and occasionally bend, stoop, squat, kneel, and climb stairs. He stated that the claimant's medication side effects could affect his alertness or concentration, but he does not require daily bed rest. The claimant must avoid heights. He opined that the claimant's pain level is moderate. Dr. Johnson also reported that the claimant could not be reasonably expected to be reliable in attending an 8-hour a day, 40-hour workweek, without missing more than 2 days per month. The undersigned notes that while Dr. Johnson is a treating physician, some of his opinion is consistent with the objective evidence of record and some is not. Additionally, employers normally allow 3 absences per month, and Dr. Johnson reported that the claimant would miss more than 2. As such, the opinion of Dr. Johnson cannot be given great weight.

15

[Tr. 19 (internal citation omitted)].

The Plaintiff argues that the ALJ erred by not citing objective medical evidence supporting her determination that only a portion of Dr. Johnson's opinion should be afforded weight and by not specifying the portions of Dr. Johnson's findings that were consistent with the evidence in the record and those that were not. [Doc. 16 at 13-14]. The Plaintiff also takes issue with the ALJ's discussion of the amount of days that an employer will tolerate. [Doc. 16 at 14].

Initially, the Court finds that the ALJ did not appropriately identify the findings by Dr. Johnson that she was crediting and those that she was not crediting. This error though was harmless. Dr. Johnson's findings as to the Plaintiff's ability to stand, walk, sit, lift, and carry and his findings regarding the Plaintiff's ability to crawl, stoop, bend, squat, kneel, and climb stairs were consistent with the ALJ's finding that the Plaintiff retained the ability to perform sedentary work and were consistent with the hypothetical posed to the vocational expert. [Tr. 757-58]. Thus, the only portions of the Inquiry that the ALJ, arguably, did not credit are the potential mental limitation brought on by pain or medicine and the finding that the Plaintiff could not comply with a standard work schedule.

In regard to the Plaintiff's alertness and concentration, Dr. Johnson merely suggested that the Plaintiff's concentration and alertness would be affected. The Plaintiff has not argued that these conditions would affect his ability to perform sedentary work, nor has he directed the Court to any medical evidence in the record that would indicate such effects. The Court finds that the ALJ did not err by not incorporating limitations on alertness and concentration into her residual functional capacity.

The final finding of Dr. Johnson is that the Plaintiff could not comply with a standard work schedule – *i.e.* eight hours per day, forty hours per week, limited absences. The issue of the Plaintiff's ability to work is reserved for the Commissioner, and thus, Dr. Johnson's opinion that the Plaintiff is, essentially, excluded from work is not entitled to special deference. See SSR 96-5p. The ALJ's discussion of how many absences an employer will tolerate is, in this context, dicta. Because this finding is inconsistent with the record and because it intrudes into the ALJ's realm of decision, the ALJ's decision not to afford weight to this finding was not error, regardless of whether an employer will tolerate two or three absences per month.

Accordingly, the Court finds that the ALJ did not err in her treatment of Dr. Johnson's findings and opinions.

## VII. CONCLUSION

Based upon the foregoing, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing sedentary work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion For Summary Judgment **[Doc. 15]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 19]** be **GRANTED**.

                                           Respectfully submitted,

                                             /s H. Bruce Guyton
                                           United States Magistrate Judge

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).